HIGGINS, Justice.
 

 Plaintiff instituted this action against the defendants, a New York corporation and a Louisiana corporation, in solido, to recover the sum of $2,500, for commissions said to have been earned under an alleged verbal contract of employment, and commissions he claims he would have earned under said contract if fhe defendants had not summarily and without cause dismissed him from their services. He prayed for a writ of attachment on the ground that one of the defendants was a nonresident and the other possessed no property within the jurisdiction of the court, except raw furs, which were being rapidly shipped out of the state.
 

 The nonresident corporation filed an exception to the jurisdiction of the court ratione personae, which was later sustained by the trial judge.
 

 The defendant resident corporation filed an application with the district judge to have the seizure reduced to the sum of $3,000, which request was promptly granted, and also filed a rule to show cause why the attachment should not be dissolved. The
 
 *97
 
 judge a quo recalled the writ on the ground that the attorney for the plaintiff had signed the affidavit attached to his application for the writ when his client was present and should have signed it himself.
 

 Plaintiff took a suspensive appeal from the judgment but did not perfect it, and later obtained an alias writ seizing the sum of $3,000. The defendant resident corporation then filed a rule to dissolve this writ, but the trial court sustained the seizure.
 

 The defendant resident corporation answered, denying that the plaintiff had been employed under a verbal contract on a commission basis, as a fur buyer, and averring that he had been employed as a helper and had been paid in full for his services. In re-convention, the defendant prayed for judgment against the plaintiff for the sum of $2,961, as damages for the illegal issuance of the writ of attachment, alleging that the plaintiff was in bad faith and had brought the suit maliciously. The damages were, itemized as follows: $250 for attorney’s fees for dissolving the writ; $1,000 for damages to its credit; $500 for loss of trade, services, worry, and distress; $275 for loss of time of defendant’s ' agent, caused by the seizure; and $936, representing profits which it would have earned by purchasing a certain lot of skins.
 

 Their was judgment in favor of the defendants, dismissing the plaintiff’s suit, and judgment in favor of the defendant resident corporation, as plaintiff in reconvention, against the plaintiff, as respondent in reconventional demand, for the sum of $2,-700.
 

 The plaintiff has appealed.
 

 The record shows that the plaintiff was a fur grader and buyer with ten years’ experience in the state of Louisiana; that the trapping season, under the law and regulations of the Conservation Department, was from December 1 through January 31; that the defendant resident corporation, Southeastern Raw Fur Merchants of Louisiana, Inc., was duly incorporated under the laws of this state in October 1934, and its officers and stockholders were the same as those of the nonresident or New York corporation; that the entire stock of merchandise of the Louisiana corporation was sold to the New York corporation; that the Louisiana corporation, during the 1934-35 fur season engaged in buying skins but did not do so during the 1935-36 season; that about November 23, 1936, the plaintiff went to the office of the Louisiana corporation in the city of New Orleans and asked Samuel Rose, president, for employment; that on November 27, 1936, Mr. Rose authorized the Conservation Department to issue the plaintiff a permit to buy skins under the corporation’s nonresident fur dealer’s license for the 1936-37 season, “as a member of the Southeastern Raw Fur Merchants of Louisiana, Inc.,” the defendant corporation; that on November 28, 1936, Mr. Rose had the plaintiff, with the assistance of David Dwoskin, office manager of the corporation, fill out an application with the American Employers Insurance Company of Boston for a bond for the sum of $2,000 to secure the corporation against any loss, damage, or expense sustained by reason of the plaintiff’s default in handling the
 
 *99
 
 funds and merchandise belonging to it; that the plaintiff made several trips with David Dwoskin, a young man from New York, who was employed on a salary basis as manager of the Louisiana corporation, for the purpose of buying furs; that they were successful in purchasing skins on most of the trips but on a few occasions they were not; that various sums of money aggregating $90 were paid to the plaintiff during that period of time; that on December 22, 1936, Samuel Rose received a letter from his office to the effect that plaintiffs bond had been apparently accepted, because a rider for the policy on him had arrived and was placed in the safe, and that the writer hoped that plaintiff could get quantities of skunk skins at- advantageous prices; that plaintiff claimed he was summarily dismissed from the company’s employment on December 22, for making claim for commissions; and after making amicable demand, through his counsel, on December 23, 1936, for his alleged earned and prospective commissions, the present suit was instituted on December 30, 1936.
 

 The plaintiff testified that he had been employed by Samuel Rose, president of the defendant corporation under a verbal contract as a fur buyer on a commission basis of 5 per cent, on the gross purchase price of small skins and 7 per cent, on the larger ones, and that he had recéivéd various cash payments aggregating $90 on account of the commissions which were to be settled at the end of the 1936-37 season. In corroboration of his testimony, he pointed to the certificate of the Conservation Commission,' the application for the bond, and the letter of the defendant’s representative to Samuel Rose, and also to the fact that it was admitted that he made several trips with Mr. Dwoskin to purchase furs for the defendant corporation.
 

 On cross-examination he was confronted with four receipts from the period of November 28, 1936, through December 16, 1936, tending to show that he had acknowledged the various sums in full settlement of all commissions due to date. His explanation was that the statement in each receipt that it was to cover commissions in full to date had been added after he signed the receipts.
 

 Samuel Rose testified that it was his intention to employ the plaintiff on a commission basis as a fur buyer, but that it was the policy of his corporation to do so only by written contract with the employee bonded, for the reason that fur buyers must be intrusted with large sums of money and valuable furs; that he agreed with the plaintiff to give him odd jobs, in order to enable him to earn some money pending the issuance of the bond by the fidelity company and signing the formal written contract, and that the amount to be paid for his services was left to the discretion of Mr, Rose; and that the receipts for the commissions in full to date contained that stipulation at the time the plaintiff signed them. His evidence was corroborated by the testimony of George Carlson, a former employee of the defendant corporation, who stated that David Dwoskin read the receipts to the plaintiff before he signed them, and no complaint was ever made by him.
 

 
 *101
 
 David Dwoskin’s testimony was taken by depositions but properly ruled out by the trial judge, because the witness refused to answer the cross-interrogatories stating that they were too many of them and it would take too long to reply to them.
 

 The trial judge concluded that the plaintiff had failed to establish his alleged verbal contract, and it is our opinion that, since the receipts appeared to be regular and have not been discredited as forgeries, his conclusion is sustained by the record.
 

 With reference to the reconventional demand, the plaintiff takes the position that the defendant and plaintiff in reconvention is not legally entitled to the damages claimed, and, in any event, that the amount allowed by the district judge is palpably excessive.
 

 The trial judge apparently came to the conclusion, as contended for by the plaintiff in reconvention, that the suit was malicious and therefore, awarded $2,700 damages where the amount claimed by the plaintiff was $2,500, and the amount under seizure was $3,000.
 

 Considering the evidence in the case, as we have already above recited, and the fact that the plaintiff showed by the testimony of Jacinto Esmele, a consulting chemist and the president of a large fur buying company, who signed the appeal bond as well as the attachment bond for the sum of $3,000, that plaintiff declined employment with his company at a salary of $2,000 for the season, because he had already been employed by the defendants, it is our opinion that the plaintiff was not acting in bad faith or maliciously in bringing this action.
 

 The compensation paid him for the period of time that he rendered services for the defendant was entirely out of proportion to the remuneration received by experienced fur buyers, and he might well have con-eluded that he was to receive the usual 5 and 7 per cent, commission on the gross price of the raw furs purchased.
 

 It may be said that the plaintiff acted unwisely in persisting in this suit after the receipts had been exhibited to him in connection with the dissolution of the writ of attachment showing that the defendants held receipts in full for commissions earned; nevertheless, we do not think it can be said that he acted in bad faith or maliciously in instituting and pressing the suit, because it was shown that he declined an opportunity to be employed for the 1936-37 fur season, or two months, for the sum of $2,000, because he was of the opinion that he had already been employed on the usual commission basis by the defendant corporation. He and his attorney having concluded that the certificate of the Conservation Department, the application for the bond, and the letter of the defendant’s representative, dated December 22, 1936, the admitted actual services rendered, and the plaintiff’s testimony that the acknowledgment in the receipts that he had been paid in full for all commissions was not there when he signed them, would outweigh the defendant representatives’ statements and the receipts 'as evidence, since the .total amount paid plaintiff was so small in comparison to that earned by an experienced fur buyer on a com
 
 *103
 
 mission basis, plaintiff was entitled to have that issue judicially determined.
 

 It is our opinion that the evidence is insufficient to show that the plaintiff acted maliciously and in bad faith in bringing, the suit and causing the writ of attachment to issue.
 

 The trial judge’s ruling in permitting the plaintiff to amend his petition to ask for an alias writ after the attachment had been dissolved for insufficiency of the affidavit is correct. Bass v. Baskowitz, 170 La. 779, 129 So. 201.
 

 Where a writ of attachment is dissolved for the technical reason that the affidavit accompanying the application therefor is faulty, and the plaintiff makes proper amendment, is granted a writ and entitled thereto, damages will not be allowed "for the dissolution of the first writ of attachment. Phelps & Co. v. Horace Boughton, 27 La.Ann. 592.
 

 Where the second writ of attachment was not dissolved on rule or motion but fell as a result of an adverse judgment on the merits of the case, attorney’s fees cannot be recovered. Fariss v. Swift & Co., 156 La. 12, 99 So. 893; Rains v. Jones et al., La.App.,, 152 So. 356
 

 We do not think that the plaintiff in reconvention proved with legal certainty its claim for $1,000 damages for impairing its 'credit; the evidence on this item consisting of the statement of the defendant corporation’s president, who stated that the credit of the corporation was impaired, and estimated the amount of the damages at $1,000. Mitchell v. Murphy, 131 La. 1040, 60 So. 677.
 

 The claim of $500 damages for loss of trade, services, worry, and distress is also disallowed for the above reason.
 

 The claim of $275 for loss of time of the defendant’s agent who was sent out to buy skins and returned home without purchasing them has not been satisfactorily proved; the amount being estimated and the claim in no way being supported by checks, receipts; etc. Furthermore, it appears from the defendant’s evidence that sufficient capital was available, if defendant wanted to bid on the lot of furs in question and defendant’s witnesses conceded that they put in a fictitious bid for the purpose of having it refused.
 

 The claim of $936 for alleged profit which would have been earned by purchasing 7,200 muskrat skins, if the defendant’s capital had not been seized, is likewise disallowed, because it appears from Mr. Rose’s testimony that within a few hours he could have had as much money as he required, “regardless of whether it was $10,000.00, $20,000.00 or $50,000.00.”
 

 The record also shows that the seizure and garnishment of the defendant’s bank account of $9,000 ' was on the defendant’s application promptly reduced to the sum of $3,000, by order of the district judge, thus releasing $6,000 of defendant’s funds.
 

 The defendant, having admitted that the bid was made for the purpose of having it rej ecte.d and that other adequate funds were available, is certainly not entitled to recover this item.
 

 
 *105
 
 For the reasons assigned, the judgment of the district court is amended by rejecting and dismissing the demands of the defendant arid plaintiff in reconvention; and, in all other respects, the judgment is affirmed; the plaintiff to pay the costs of the district court, and the costs of this appeal are to be borne by the defendant Southeastern Raw Fur Merchants of Louisiana, Inc.
 

 O’NIELL, C. J., concurs in the decree.